**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANTOINETTE SUCHENKO AND JARED CHARLAP,<br><br>Plaintiffs,<br><br>v.<br><br>WINE RACKS AMERICA, INC.,<br><br>Defendant. | Civil Action No. 2:25-cv- 0161<br><br>LEAD CASE |
| IAN FOLEY AND JARED CHARLAP,<br><br>Plaintiffs,<br><br>v.<br><br>HOUSE OF OUTDOORS, INC. DBA GOOGAN SQUAD,<br><br>Defendant. | Civil Action No. 2:25-cv-0174<br><br>MEMBER CASE |

**ORDER**

AND NOW, this  24th  day of _____June_____, 2025, upon consideration of Plaintiffs' Motion for Default Judgment and Defendant's failure to answer or respond to Plaintiffs' Complaint within the time prescribed by the Federal Rules of Civil Procedure, the Court finds:

1.        The Court has personal jurisdiction over the parties and subject matter of this action.

2.        Plaintiffs Foley and Charlap are, and at all times relevant hereto have been, legally blind. As a result, Plaintiffs are a member of a protected class under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

3.        Defendant House of Outdoors, Inc. dba Googan Squad offers outdoor clothing, equipment, and related products at https://googansquad.com/ ("Website.") Defendant purposefully

targets and otherwise solicits business from Pennsylvania residents through its Website such that this Court has jurisdiction over Plaintiffs' website accessibility claims.

4.      Defendant's Website is a public accommodation pursuant to 42 U.S.C. § 12181(7) and Defendant must make it accessible to individuals with disabilities.

5.      Plaintiffs have patronized Defendant's Website, but are unable to access Defendant's online goods and services because the Website is incompatible with the screen-reader software that individuals with visual disabilities use to access content on the internet.

6.      Defendant has violated Title III of the ADA and its implementing regulations by failing to make its Website accessible to screen-reader software.

7.      Without injunctive relief, Defendant will continue to discriminate against Plaintiffs and other individuals who require that Defendant create or modify its corporate policies to ensure its Website becomes, and remains, accessible to screen-reader software.

**It is therefore DECLARED that:**

8.      At the commencement of this action, Defendant was in violation of Title III of the ADA and its implementing regulations in that Defendant took no action that was reasonably calculated to ensure that its Website https://googansquad.com/ is fully accessible to and independently usable by blind individuals.

**It is also ORDERED that:**

9.      Pursuant to 42 U.S.C. § 12188(a)(2), Defendant, and all persons and entities in privity, combination, participation or acting in concert with Defendant, including but not limited to its agents, servants, employees, franchisees, distributors, licensees, successors and assigns, attorneys, officers and directors, whether on behalf of any other business entity heretofore or hereafter created, shall take the following steps necessary to bring its Website,

https://googansquad.com/, into full compliance with the requirements set forth in the ADA and its implementing regulations, so that it is fully accessible to and independently usable by blind individuals. To ensure Defendant's remediation plan is sufficient, Defendant shall:

a.      retain, at its expense, ADASure ("Mutually Agreed Upon Consultant"), who shall assist Defendant in improving the accessibility of its Website so that it complies with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA") by conducting (1) an accessibility audit on critical use paths within https://googansquad.com/ for conformance with WCAG 2.0 (AA) standards; (2) a 2-day onsite combined Developer/QA training session; and (3) monthly testing for a period of two years after the Mutually Agreed Upon Consultant verifies Defendant's website conforms with WCAG 2.0 (AA) in a Letter of Conformance;

b.      work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

c.      work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a monthly basis to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

d.      work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

e.      incorporate all of the Mutually Agreed Upon Consultant's recommendations within sixty (60) days of receiving the recommendations;

   f. directly link from the footer on each page of the Website a statement that indicates that Defendant is making efforts to maintain and increase the accessibility of its Website to ensure that persons with disabilities have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Defendant through the Website;

   g. work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and toll-free phone number to report accessibility-related problems;

   h. provide a notice, prominently and directly linked from the footer on each page of the Website, soliciting feedback from visitors to the Website on how the accessibility of the Website can be improved. The link shall provide a method to provide feedback, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

   i. provide a copy of the Web Accessibility Policy to all web content personnel, contractors responsible for web content, and Client Service Operations call center agents ("CSO Personnel") for the Website;

   j. train no fewer than three of its CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the Website. Defendant shall have trained no fewer than three of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation. Defendant shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance; and,

   k. modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the Website to be inaccessible to users of screen reader technology.

10.     Plaintiffs, their counsel, and experts may monitor the accessibility of the Website for up to two (2) years after the date of the Mutually Agreed Upon Consultant's Letter of Conformance. To this end, Plaintiffs, through their counsel and experts, shall be entitled to consult with the Mutually Agreed Upon Consultant at their discretion, and to review any written material the Mutually Agreed Upon Consultant provides Defendant.

11.     The Court shall retain jurisdiction for a period of two (2) years after the date of the Mutually Agreed Upon Consultant's Letter of Conformance to ensure Defendant has adopted and implemented adequate accessibility maintenance policies.

12.     Plaintiffs, as the prevailing party, may file a fee petition before the Court surrenders jurisdiction. Pursuant to *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986), supplemented, 483 U.S. 711 (1987), and *Garrity v. Sununu*, 752 F.2d 727, 738-39 (1st Cir. 1984), the fee petition may include the costs to monitor Defendant's compliance with the permanent injunction.

BY THE COURT:

s/ Arthur J. Schwab
United States District Judge